*In the United States District Court*
*for the Northern District of Illinois*
*Eastern Division*

| | |
|---|---|
| Marcus Morgan, | |
| plaintiff, | **#10 C 0474** |
| – v – | Magistrate Judge Brown |
| SVT, LLC, an Indiana limited liability company, d/b/a Strack & Van Til and Strack and Van Til Super Market, Inc., an Indiana corporation, | **Jury trial demanded** |
| defendants. | |

## Response Opposing Motion for Summary Judgment

## Statement of Facts

<u>Defendant fires Mr. Morgan soon after he reports that a white manager shoplifted</u>

On approximately October 8, 2007, defendant learned from plaintiff Marcus Morgan, an African-American Loss Prevention Officer at its Elston Avenue store, that Frank Kajdawowski, the white Dairy Manager at the Elston store, had taken an item without paying for it.[1]  Mr. Morgan reported the white manager's shoplifting either the night it occurred or the next day.[2]  Defendant claims that Mr. Morgan did not report the white manager's shoplifting when it occurred.[3]

Mr. Morgan and his direct supervisor, Manager Ray Gutierrez, who is Hispanic, then watched together the security video of the white manager shoplifting.[4]

---

[1]     Answer to Complaint (doc. #9) at ¶11; Plaintiff's Rule 56.1(b)(3) Statement (doc. #38) at Additional Facts ¶1 and at Response to Moving Party ¶28.

[2]     <u>Id</u>. at Response to Moving Party ¶13.

[3]     <u>Id</u>. at Response to Moving Party ¶13.

[4]     <u>Id</u>. at Additional Facts ¶2 and at Response to Moving Party ¶¶6, 14.

Manager Gutierrez had worked with Mr. Morgan for a number of years and knew him to be a very competent loss prevention officer.[5]  Indeed, before Mr. Morgan reported the white manager for shoplifting, defendant had not issued Mr. Morgan any written disciplinary notices for low quality of work, for poor quality of work, for lack of production, or for lack of theft stops.[6]  However, on October 9, 2007 – the day after Mr. Morgan had reported to defendant that the white manager had shoplifted – Manager Gutierrez issued Mr. Morgan two write-ups.[7]  One of these write-ups was for alleged lack of theft stops and asserted that Mr. Morgan had no theft apprehensions in the first week of October 2007 even though Mr. Morgan had just reported the white manager for shoplifting and even though Mr. Morgan and Manager Gutierrez had watched the videotape of that incident together.[8]  The other write-up was for arriving to work tardy and for allegedly failing to follow the chain of command when notifying defendant of the delay that occasioned that tardy, even though before Mr. Morgan had reported a white manager for shoplifting, defendant has excused his occasional tardies and even though Mr. Morgan had communicated the delay that occasioned that tardy to Assistant Security Director Darrell Roberts.[9]

---

[5]     <u>Id</u>. at Response to Moving Party ¶24.

[6]     <u>Id</u>. at Additional Facts ¶4.

[7]     <u>Id</u>. at Additional Facts ¶5.

[8]     <u>Id</u>. at Additional Facts ¶6 and at Response to Moving Party ¶14.

[9]     <u>Id</u>. at Additional Facts ¶7.

As noted, defendant had a video of the white manager shoplifting, and Manager Gutierrez had watched that video with Mr. Morgan.[10]  Defendant suspended for one day the white manager who had shoplifted, but fired Mr. Morgan, allegedly for insufficient theft stops, just 17 days after he had reported the white manager for shoplifting.[11]  For a loss-prevention officer to make a retail-theft stop without committing either a crime or a tort, however, the stop must meet all the requirements of the Illinois Shopkeeper's Privilege, 720 ILCS 16A-5 (repealed by P.A. 97-597 effective 1/1/2012 and replaced by 720 ILCS 5/16-26).[12]

Defendant's credibility problems

Defendant has claimed both that Mr. Morgan had properly handled the situation of the white manager shoplifting and that Mr. Morgan had handled that situation improperly.[13]

Defendant's Director of Human Resources represented to the Equal Employment Opportunity Commission that Mr. Morgan would not have been fired had he apprehended the white manager for stealing:

> "The reality of the situation is had [Mr. Morgan] apprehended the supervisor he would have prevented his termination for lack of theft stops".[14]

---

[10]     Id. at Additional Facts ¶10 and at Response to Moving Party's ¶14.

[11]     Id. at Additional Facts ¶¶8, 9, 11 and at Response to Moving Party ¶¶15, 20.

[12]     Id. at Additional Facts ¶12.

[13]     Compare, id. at Additional Facts ¶¶3, 13 and Response to Moving Party ¶34 to id. at Additional Facts ¶¶14, 15, 16.

[14]     Id. at Additional Facts ¶16.

However, in defendant's 30(b)(6) deposition, this same HR director testified that Mr. Morgan would have been fired regardless of whether or not he had detained the white manager for stealing.[15] In addition, John Mowery, defendant's Director of Loss Prevention, thought that Mr. Morgan had handled this situation properly and should not have done anything other than what he had done.[16]

Pretextual nature of defendant's alleged reason

Although defendant accused Mr. Morgan of insufficient stops, defendant did not have a policy or a quota as to the number of theft stops that needed to be made.[17] In addition, as noted, for a loss-prevention officer to make a retail-theft stop without committing either a crime or a tort, the stop must meet all the requirements of the Illinois Shopkeeper's Privilege.[18]

Not all of defendant's stores have a loss-prevention officer assigned to them for all hours the store is open, and Mr. Morgan was working only part time at the Elston store.[19] Only Manager Gutierrez and Mr. Morgan were assigned as security for that store.[20] The Elston store numbers were always high, both before and after Mr. Morgan was fired.[21]

---

[15] Id. at Additional Facts ¶17.

[16] Id. at Additional Facts ¶¶3, 13 and Response to Moving Party ¶34.

[17] Id. at Response to Moving Party ¶27.

[18] Id. at Additional Facts ¶12.

[19] Id. at Additional Facts ¶20 and Response to Moving Party ¶4.

[20] Id. at Response to Moving Party ¶8.

[21] Id. at Response to Moving Party ¶23.

# Argument

**I.      Defendant has not put forward a legitimate business reason for firing Mr. Morgan, because requiring somebody to commit a crime or a tort is not legitimate.**

For purposes of a <u>McDonnell-Douglas</u> analysis, "to be legitimate, a reason must at least be legal. An illegal reason cannot carry a permissible inference of legal motivation." Player, <u>Defining "Legitimacy" in Disparate Treatment Cases: Motivational Inferences as a Talisman for Analysis</u>, 36 Mercer L. Rev. 856 at 866 (1985). Indeed, in Illinois, it is illegal for an employer to take action against an employee because that employee has "refus[ed] to participate in an activity that would result in a violation of a State or federal law, rule, or regulation...." Illinois Whistleblower Act §20 <u>codified at</u> 740 ILCS 174/20.

<u>Cooper v. Housing Authority</u>, 1995 U.S. Dist. LEXIS 10473, 67 Fair Empl. Prac. Cas. (BNA) 617 (N.D. Ala. 1995), provides an example of a reason not being "legitimate" because it required an employee to do an illegal act. <u>Cooper</u> was a Title VII discrimination and retaliation case in which one of the defendant's alleged "legitimate" business reasons for having fired the plaintiff was that she had been insubordinate in refusing to alter her time card when requested. However, because requiring an employee to alter a time card was a violation of the Fair Labor Standards Act, the court held that plaintiff's failing to do so could not be a "legitimate" business reason that would justify the employer's firing her. 1995 U.S. Dist. LEXIS 10473 at *6 - *7; 67 Fair Empl. Prac. Cas. at 618-19.

Defendant's alleged legitimate business reason is "insufficient theft stops". However, such stops are both a tort (false imprisonment) and a crime (kidnaping)

unless the stop fits within the narrow confines of the Illinois Shopkeeper's Privilege, which requires "reasonable grounds to believe that a person has committed retail theft".[22]  In our case, defendant has put forth no evidence whatsoever that Mr. Morgan had situations in which he had "reasonable grounds" under the Illinois Shopkeeper's Privilege but failed to act on them.  And just as in Cooper v. Housing Authority, supra, requiring an employee to have altered her time card was asking the employee to do something illegal, so, in our case, asking Mr. Morgan to simply go out and stop people without reasonable grounds was asking him to do something illegal.  And also as in Cooper requiring the employee to do something illegal could not be a legitimate business reason, so, in our case, requiring Mr. Morgan to do something illegal – kidnap and falsely imprison – cannot be a legitimate business reason.

Thus, because defendant's requiring Mr. Morgan to make "sufficient theft stops" would have required Mr. Morgan to have committed crimes (kidnaping) and torts (false imprisonment), defendant's alleged reason of "insufficient theft stops" is not a legitimate business reason for firing Mr. Morgan, and defendant's Motion for Summary Judgment should be denied.

**II.        Summary judgment on liability should be entered in Mr. Morgan's favor, because defendant has failed to articulate a legitimate business reason for firing Mr. Morgan.**

Even when plaintiff has not filed a cross-motion for summary judgment, it is well settled that:

---

[22]    When Mr. Morgan was fired, the Shopkeeper's Privilege was codified at 720 ILCS 16A-5. That section was repealed by P.A. 97-597 effective 1/1/2012 and replaced by a new section 720 ILCS 5/16-26.

> "summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under Rule 56. A motion for summary judgment searches the record. If undisputed facts are found which, when applied to the law, indicate that judgment against the moving party is appropriate, Rule 56(c) will operate to grant summary judgment in favor of the non-moving party."

Sunderlin v. First Reliance Standard Life Ins. Co., 235 F.Supp. 2d 222 at 226 (W.D.N.Y. 2002), quoting Dempsey v. Town of Brighton, 749 F.Supp. 1215 at 1220 (W.D.N.Y.1990), affirmed sub. nom Curenton v. Town of Brighton, 940 F.2d 648 (2d Cir. 1991), cert. denied, 502 U.S. 925 (1991) (citations omitted).

In our case, as noted, defendant has failed to articulate a legitimate business reason for having fired Mr. Morgan. Defendant's failure to articulate such a legitimate business reason entitles Mr. Morgan to judgment on liability under a McDonnell-Douglas analysis. See, e.g., Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 at 254-55 (1981). Therefore, defendant's Motion for Summary Judgment should be denied, summary judgment on liability should be entered for Mr. Morgan, and this case should be set for a prove-up on damages.

## III. Defendant's Motion for Summary Judgment should be denied because the evidence of pretext requires a jury to decide this case.

This case has more than sufficient evidence of pretext to require a jury to decide it. First, defendant began writing up Mr. Morgan – who previously had had a clean record – the day after Mr. Morgan reported a white supervisor for shoplifting and fired Mr. Morgan shortly thereafter. Such suspicious timing is evidence of pretext. See, e.g., Loudermilk v. Best Pallet Co., 636 F.3d 312 at 315 (7th Cir. 2011) (termination same day as written complaint); Casna v. City of Loves Park, 574 F.3d 420 at 427 (7th Cir. 2009)

(inference of causality reasonable where supervisor recommended termination the day after an employee made a protected statement and employee was terminated three days later); McClendon v. Ind. Sugars, Inc., 108 F.3d 789 at 797 (7th Cir. 1997) (inference of causality reasonable when two to three days separated employee's protected statement and termination).

Second, when defendant began writing-up Mr. Morgan the day after he had reported the white supervisor for shoplifting, those write-ups made no sense.  One of these write-ups was for alleged lack of theft stops and asserted that Mr. Morgan had no theft apprehensions in the first week of October 2007, even though Mr. Morgan had just reported the white manager for shoplifting and Mr. Morgan and Manager Gutierrez, who gave Mr. Morgan the write-up, had watched the videotape of that incident together. The second write-up was for arriving to work tardy and for allegedly failing to follow the chain of command when notifying defendant of the delay that occasioned that tardy, even though before Mr. Morgan had reported a white manager for shoplifting, defendant has excused his occasional tardies and even though Mr. Morgan had communicated the delay that occasioned that tardy to Assistant Security Director Darrell Roberts.

Third, defendant fired Mr. Morgan, an African-American, but only suspended for one day the white manager who had actually shoplifted.  Treating members of different racial groups differently for offenses of comparable or even worse seriousness is evidence of pretext.   See, e.g., Coleman v. Donahoe, _ F.3d _, #10-3694 at *38 - *44 (7th Cir. 1/6/2012)

Fourth, defendant claims that Mr. Morgan had insufficient theft stops, but, as noted above, defendant has no evidence whatsoever that Mr. Morgan had "reasonable grounds" under the Illinois Shopkeeper's Privilege to stop anybody but failed to act on them. In addition, defendant had no reason at all to blame Mr. Morgan for any shortages at the Elston store: Only Mr. Morgan and Manager Gutierrez were assigned as security for that store, and Mr. Morgan was only part-time. The Elston store numbers were always high, both before and after Mr. Morgan was fired, and it is not even clear that the Elston store had a loss-prevention officer assigned to it for all the hours the store was open. Defendant has no evidence whatsoever that anything Mr. Morgan did or did not do was tied into any problems the Elston store had.

Fifth, despite allegedly firing Mr. Morgan for "insufficient" theft stops, defendant has no policy or quota about what sufficient theft stops might be. Such a failure to follow policy is inherently suspicious and evidence of pretext. See, e.g., Rudin v. Lincoln Land Community College, 420 F. 3d 712 at 723 (7th Cir. 2005); Byrd v. Lakeshore Hospital, 30 F.3d 1380 at 1382-1383 (11th Cir. 1994).

Sixth, defendant told the EEOC that Mr. Morgan would not have been fired had he apprehended the white supervisor, but then shifted in litigation to claiming the opposite, which also is evidence of pretext. See, e.g., Brunker v. Schwan's Home Service, Inc., 583 F. 3d 1004 at 1007 & n. 1 (7th Cir. 2009), Rudin v. Lincoln Land Community College, supra, 420 F. 3d at 723-724; Stalter v. Wal-Mart Stores, Inc., 195 F.3d 285 at 291 (7th Cir. 1999).

In short, Mr. Morgan's case has a lot of evidence of pretext that requires that a jury decide this case, so defendant's Motion for Summary Judgment should be denied.

**IV.      From the circumstantial evidence in this case, a reasonable jury could find that defendant discriminated against Mr. Morgan on the basis of his race.**

Circumstantial evidence is a well-recognized theory in discrimination cases.  See, e.g., Coleman v. Donahoe, supra, #10-3694 at *52 - *53 (7th Cir. 1/6/2012) (Wood, J., concurring); Diaz v. Kraft Foods Global, 653 F.3d 582 at 586-587 (7th Cir. 2011); Sylvester v. SOS Children's Villages, 453 F. 3d 900 at 902-904 (7th Cir. 2006); Troupe v. May Department Stores Co., 20 F. 3d 734 at 736 (7th Cir. 1994).

In Mr. Morgan's case, there is a great deal of circumstantial evidence from which a jury could find discrimination.  All the pretext evidence above – suspicious timing, treating African-American employees worse than white employees were treated for similar or worse offenses, lack of a legitimate business reason, write-ups that made no sense, failure to follow own policies, and shifting in litigation from what it had told the EEOC – is also circumstantial evidence of discrimination.  In addition, there is the totality of the circumstances in the way defendant treated Mr. Morgan once he had reported that a white manager had shoplifted.

"Employment discrimination cases often center on parties' intent and credibility, which must go to a jury unless 'no rational factfinder could draw the contrary inference.'"  Darchak v. City of Chicago Bd. of Educ., 580 F. 3d 622 at 633 (7th Cir. 2009), quoting Veprinsky v. Fluor Daniel, Inc., 87 F.3d 881 at 894 (7th Cir.1996).  In Mr. Morgan's case, because the circumstantial evidence would permit the fact-finder to draw a reasonable inference of discrimination, defendant's Motion for Summary Judgment should be denied and the case sent to the jury.

**V.      Defendant's Motion for Summary Judgment should be denied because defendant's credibility problems require a jury to decide.**

"There is no presumption that witnesses are truthful."  Lust v. Sealy, Inc., 383 F.3d 580 at 583 (7th Cir. 2004).  For that reason, the black-letter law is that, on summary judgment, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe".  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 at 151 (2000) (emphasis added).

When this case goes to the jury, the jury will be instructed that, in deciding whether or not to believe a witness's testimony, it can take into account, among other things, prior inconsistent statements as well as "any interest, bias, or prejudice the witness may have".  See, 7th Circuit Civil Pattern Jury Instructions at 1.13 Testimony of Witnesses (Deciding What to Believe), 1.14 Prior Inconsistent Statements.  In our case, defendant's witnesses have changed their story and contradicted each other.  Thus, defendant's HR director told the EEOC that Mr. Morgan would not have been fired had he apprehended the white supervisor, but then shifted during her deposition to claim the opposite.  Defendant's witnesses also contradicted each other on whether or not Mr. Morgan had properly handled the situation of the white manager shoplifting, testifying that Mr. Morgan had handled that situation both properly and improperly.

Further, in our case, defendant's witnesses are accused of personally violating federal law in their decision to fire Mr. Morgan.  Those witnesses thus have a reputational interest in the case being decided in favor of defendant, lest they be found to have discriminated on the basis of race.  Because of that reputational interest, as recognized by pattern jury instruction 1.13, a jury could disbelieve defendant's witnesses

own statements as to there own motives, and any inference that defendant's witnesses have accurately described their own motives simply cannot be credited in support of defendant's motion for summary judgment.  <u>See</u>, <u>e.g.</u>, <u>Reeves</u>, <u>supra</u>, 530 U.S. at 150 ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

Indeed, in virtually all areas of the law, an affidavit by somebody accused of breaking federal law as to his or her own pure motives is not a "get-out-of-jail-free card". <u>See</u>, <u>e.g.</u>, <u>Alexander v. Louisiana</u>, 405 U.S. 625 at 632 (1972) ("affirmations of good faith" are "insufficient to dispel a <u>prima</u> <u>facie</u> case") (jury selection); <u>Teamsters v. U.S.</u>, 431 U.S. 324 at 342, n. 24 (1977) (accord) (pattern and practice case); <u>U.S. v. Flomenhoft</u>, 86 C 1588, 1987 WL 7598 at *4. (N.D. Ill. 1987) <u>aff'd</u> 843 F.2d 500 (7th Cir. 1988) (refusing to credit testimony of allegedly innocent spouse in "innocent-spouse" tax case); <u>U.S. v. N. 48 Feet of Lots 19 and 20 in Block 8</u>, 138 F.3d 1268 at 1269 (8th Cir. 1998) (knowledge inferred in "innocent owner" drug-forfeiture).  That is why "the summary judgment standard is applied 'with added rigor in employment discrimination cases, where intent and credibility are crucial issues.'"  <u>Courtney v. Biosound, Inc.</u>, 42 F.3d 414 at 418 (7th Cir. 1994).  As the Seventh Circuit explained in <u>Lust v. Sealy, Inc.</u>, <u>supra</u>:

> "Sealy's contention that 'the jury cannot be permitted to simply choose to disbelieve the evidence offered by Sealy' is a misleading half-truth.  It is true that a plaintiff cannot prevail without offering any evidence of his own, simply by parading the defendant's witnesses before the jury and asking it to disbelieve them.  That would be 'a no-evidence case, and [in] such a case a plaintiff must lose, because he has the burden of proof.' .... But if the plaintiff offers evidence of her own, as she did here, the jury is free to disbelieve the defendant's contrary evidence.  There is no presumption that witnesses are truthful."

383 F.3d at 582-83 (citations omitted).[23]  In our case, Mr. Morgan has offered evidence

of his own (see, e.g., plaintiff's Rule 56.1 Statement [doc. #38] at Additional Facts

¶¶1 - 20), so the jury would be free to disbelieve defendant's witnesses.  See also, Loeb v.

Textron, Inc., 600 F.2d 1003 at 1011, n.5 (1st Cir. 1979) (insufficient for employer "to

offer vague, general averments of good faith"); Dyer v. Community Memorial Hosp.,

2006 WL 435721 at *11 (E.D. Mich. 2006) ("self-serving statement by the defendant's

representative that no illegal discrimination animated the defendant's actions is

insufficient to put the plaintiffs to their proofs at the summary judgment stage")

(dictum).

Thus, because a reasonable jury would not have to believe defendant's witnesses

as to their own motives and their own good-faith, that testimony cannot be credited for

purposes of granting defendant's Motion for Summary Judgment.  Therefore,

defendant's Motion for Summary Judgment must be denied.

## Conclusion

For these reasons, defendant's Motion for Summary Judgment should be denied,

summary judgment on liability should be entered for Mr. Morgan, and this case should

be set for a prove-up on damages.

Marcus Morgan,
plaintiff,

By:        s/David L. Lee
His attorney

---

[23]     Although Lust v. Sealy concerns an appeal from a jury verdict the standard is the same
as with a motion for summary judgment.  See, Reeves, supra, 530 U.S. 133 at 150.

**<u>Proof of service</u>**:  David L. Lee, an attorney, certifies that this Response was served on defendant's attorneys by ECF on January 9, 2012.

s/David L Lee
David L. Lee

David L. Lee, ARDC #1604422
LAW OFFICES OF DAVID L. LEE
53 W. Jackson Blvd., Suite 505
Chicago, IL  60604
312-347-4400
d-lee@davidleelaw.com